NATIONAL LABOR RELATIONS
BOARD, Petitioner,
v.
JOHN S. BARNES CORPORA-
TION, Respondent.
No. 72–1636.

United States Court of Appeals,
Seventh Circuit.

Argued April 13, 1973.

Decided May 1, 1973.

Peter G. Nash, Gen. Counsel, Julius Rosenbaum, Atty., N. L. R. B., Washington, D. C., for petitioner.

James S. Petrie, Chicago, Ill., for respondent.

Before HASTINGS, BARNES * and SPRECHER, Circuit Judges.

BARNES, Senior Circuit Judge.

The National Labor Relations Board petitions this court for enforcement of its order, 195 N.L.R.B. No. 123 as supplemented by 197 N.L.R.B. No. 10, issued against the John S. Barnes Corporation pursuant to § 10(e) of the National Labor Relations Act, as amended, 61 Stat. 136, 73 Stat. 519, 29 U.S.C. § 151, et seq. The incidents giving rise to this action occurred in Rockford, Illinois, thus giving this court jurisdiction of the matter.

On May 26, 1964, Local 1553, International Association of Machinists and Aerospace Workers, AFL–CIO, filed a representation petition with the Board seeking to represent a unit of the Company's employees. A Board-conducted election was held in August, 1964, and the Union did not receive a majority of the votes cast. Objections to the conduct of the election were filed with the Board together with unfair labor prac-

---

* The Honorable Stanley N. Barnes, Senior Circuit Judge for the Ninth Circuit, sitting by designation.

tice charges. On a consolidated proceeding, the Board held that the Company violated § 8(a)(3) and § 8(a)(1) of the Act and set aside the August, 1964 election, 180 N.L.R.B. 911 (1970). A second election with a redefined unit was ordered.

The second election was held in May, 1970. The Union received an 85 to 75 majority of the ballots cast, with 12 ballots challenged. The Company filed seven timely objections to the election, but the Board certified the Union as the exclusive bargaining representative of the designated unit. The Company refused to bargain with the Union and the Board found the Company to be in violation of § 8(a)(5) and § 8(a)(1) of the Act. The Company was ordered to bargain with the Union but refused. This petition for enforcement of the order was then duly filed.

1. Now An Election Can Be Held As Promised!!!
   ORDER DENYING MOTION
   On January 23, 1970, the National Labor Relations Board issued a Decision, Order, and Direction of Second Election in the above-entitled proceeding in which the Board, *inter alia*, dismissed the Section 8(a)(5) allegation of the consolidated complaint, and directed a second election in Case 13–RC–10159 among certain employees of John S. Barnes Corporation, herein called the Respondent, at such time as the Regional Director for Region 13 deemed appropriate. Subsequently, the Union filed with the United States Court of Appeals for the District of Columbia a petition for review of that portion of the Board's Order which dismissed the Section 8(a)(5) allegations of the consolidated complaint, and the Board filed an application for enforcement of the Board's Order.

   Thereafter, on April 20, 1970, the Respondent filed a Motion for Stay of the Second Election and a memorandum in support of its motion. It moves the Board to stay the holding of the second election pending review by the Court of the Board's Decision, Order, and Direction of Second Election, contending "that application of existing Board precedent and policy necessitates postponement of a second election herein until the issues raised by the Union's Petition for Review are resolved by the Court of Appeals."

The Company only argues three of its original seven objections to the second election. We find that Objection No. 3, which protested the Union's distribution of a reproduced official Board document to which partisan messages had been added, was valid. It is therefore unnecessary to consider the other Objections, and we deny the application for enforcement.

On April 23, 1970, the Board issued its "Order Denying Motions" for stay of the second election. The Union on April 29, 1970 printed above a copy of this Order the words: *"Now An Election Can Be Held As Promised!!!"* and distributed the Order as a handbill to the employees.[1]

Two days later, on May 1, 1970, the Union printed and distributed a second circular, (Ex. "B," A. at 122).[2] The Re-

   The Board having duly considered the matter,
   IT IS HEREBY ORDERED that the Respondent's Motion for Stay of Second Election be, and it hereby is, denied as lacking merit.
   Dated, Washington, D. C., April 23, 1970
   By direction of the Board.

2. IAM WINS THREE IMPORTANT VICTORIES!!
   1) . . . . The handbill of Wednesday, April 29, 1970 is a copy of Order Denying Motion. The Order reads, "It is hereby ordered that the Respondent's Motion for Stay of Second Election be, and it hereby is, *denied as lacking merit*."
   This means the government has denied MR. SVENSON'S frantic efforts to stall the election.
   2) . . . . At the NLRB Conference in Chicago April 27, 1970, the IAM was successful in preventing the company from stopping the election.
   The U.S. Government will proceed and set the time, date and place despite the frantic efforts of the company to delay the election.
   3) . . . . The IAM was also successful in maneuvering the company into denying an election on company premises.

gional Director of the National Labor Relations Board, in passing on the "Employer's Objections to Conduct of Election and Conduct Affecting Results of Election," held that "[B]ecause of the closeness between the distribution of the April 29th and May 1st handbills, and the inter-relationship between the two, as indicated by the references in the May 1st handbill to the Order Denying Motion, the undersigned has considered both handbills as one. Any comment on the second handbill must be considered as reflecting and commenting on the Board's Order Denying Motion." (A. at 136).

The Regional Director then stated:

"It is clear that in considering both handbills, the Union has added to an official document of the Board, a message. However in the opinion of the undersigned, *this message could in no manner be interpreted by the employees as an endorsement by the Board of the Union.* There is no tendency to mislead the voters into believing that the Board favors the Union, *since the Union's messages merely proclaim that the Union was successful in obtaining an election.* Therefore, it is recommended that Objection No. 3 be overruled." (Emphasis added.)

The Board affirmed the Regional Director's holdings without comment, on a motion for summary judgment.

The existence of "a message" added by the Union to the Board's order, is thus recognized by both the Regional Director and the Board. To say that portions of Exhibit B (appearing herein in note 2) "could in no manner be interpreted by the employees as an endorsement by the Board of the Union" flies in the face of reason and experience.

To conclude that "the Union's messages merely proclaim that the Union was successful in obtaining an election" lies in the same category. It was more. It was a partisan statement, and we can only conclude it was added for a purpose which seems obvious.

The general rule governing election propaganda was stated in Stewart-Warner Corp., 102 NLRB 1153 (1953):

"The Board does not undertake to police or censor propaganda used in the elections it conducts, but rather leaves to the good sense of the voters the appraisal of such matters, and to opposing parties the task of correcting inaccurate and untruthful statements." 102 NLRB at 1158; Cf., Linn v. Plant Guard Workers, 383 U.S. 53, 60, 86 S. Ct. 657, 15 L.Ed.2d 582 (1966)".

An exception to this general rule was stated in Allied Electric Products, Inc., 109 NLRB 1270 (1954), where an election was overturned because the Union had distributed a document which was ostensibly an altered reproduction of an official ballot. The Board now argues that *Allied Products* " . . . will be invoked and the election set aside only when the printed material amounts to a copy or close facsimile of an official Board document, and is altered to give the appearance of favoring one of the parties in an election." (Petitioner's Brief at 29–30.) This position is totally inconsistent with the Board's prior decisions. In Rebmer, Inc., 173 NLRB 1434 (1968), the Board set aside an election where the Board's election notice had been reprinted and altered. The Board's ruling in *Rebmer* is, in our opinion the better rule, and is dispositive of the matter *sub judice.* It reads:

"*Our concern is not with the substance of the material added to the*

This will assure you your right to a secret ballot vote *without* MR. SVENSON'S intimidation, coercion or surveillance!!
When the Board Sets the Election Date— the Union Will Notify You Immediately.

Don't Let Mr. Svenson Cheat You Out of Your Right As an American Citizen . . . *Your Right to Vote!!*
Lodge No. 1553, IAM
Organizing Committee

**1108**

Board's official notice of election, but with the possible impact such a partisan message added to an official Board document, or copy thereof, might have on the freedom of choice of the voter. We are of the opinion that the Board has a responsibility to inform employees fully of their rights and privileges under the Act, and to conduct elections in an atmosphere conducive to a determination of the uninhibited preference of employees. To that end the Board's notice of election contains information the Board believes should be made available to employees to improve their capability of casting a vote that fully reflects this freedom of choice. To this end the Board also publishes a leaflet including the same type of information, and it is available to anyone who desires to use it. The Board also has a responsibility to protect its processes against abuse or undesirable use. To duplicate a part of the Board's official notice and then to add to it a personal partisan message that may be interpreted by the employee as an endorsement by the Board of one of the parties to the election, and thus have an impact on the employees' freedom of choice, is, we think, an undesirable use of Board documents designed for another purpose. *That the Union's message in this case may be arguably innocuous and that there may have been at most a narrow or technical violation of the Allied Electric Products, 109 NLRB 1270, rule, is clearly irrelevant. Whether deliberate or unintentional, such action has a tendency to mislead, and we are of the opinion that the Board should guard against having its prestige put to such possible abuse."* *Idem,* at 1434 & 5. (Emphasis added.)

*Cf. also:* Superior Knitting Corporations, 112 NLRB 984 (1955).

For the reasons expressed by the Board in Rebmer, Inc., (supra), the application herein for enforcement is denied.