LAKE ODESSA MACHINE PROD-
UCTS, INC., a wholly-owned subsidi-
ary of Sparton Corporation, Petition-
er,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 74–1491.

United States Court of Appeals,
Sixth Circuit.

March 19, 1975.
As Amended May 23, 1975.

Carl E. Ver Beek, Thomas J. Barnes,
Varnum, Riddering, Wierengo & Chris-

tenson, Grand Rapids, Mich., for petition-
er.

Elliott Moore, Deputy Associate Gen.
Counsel, Peter G. Nash, John S. Irving
Jr., Patrick H. Hardin, Paul Spielberg,
Stephen D. Quinn, N.L.R.B., Washington,
D. C., Bernard Gottfried, Director, Re-
gion 7, N.L.R.B., Detroit, Mich., for re-
spondent.

Before PECK and LIVELY, Circuit
Judges, and McALLISTER, Senior Cir-
cuit Judge.

McALLISTER, Senior Circuit Judge.

This case has its genesis in a repre-
sentative election first conducted on No-
vember 1, 1972. The Union lost that
election by a vote of 49 to 25. The Un-
ion filed objections to the election and,
on December 1, 1972, a hearing was con-
ducted before a Board Hearing Officer.
On January 18, the Hearing Officer rec-
ommended that the election objections
be sustained, and that a second election
be ordered. The employer chose not to
appeal the Hearing Officer's report and,
instead, agreed to another election. Ac-
cordingly, the November election was set
aside and a second election was held on
March 5, 1973.

The results of the second election were
52 votes for the Union; 22 votes against
and 4 challenged ballots. It appears
that the election was held on a Monday.

On the Friday and Saturday preceding
the election, the Union distributed to the
workers materials which invoked Board
processes by quoting the NLRB as mak-
ing statements which it did not make.
Union agents made false statements re-
garding the employees' profits. The Un-
ion distributed false and prejudicial
handbills which contained cartoons calcu-
lated and intended to show that the em-
ployer mistreated the workers and that
the Government had accused the employ-
er of "Foul" tactics in order to prejudice
the workers against the employer.

These handbills contained language, in
quotation marks and attributed to the
National Labor Relations Board, which
had never been used by the Board in any

order pertaining to Lake Odessa. The language on the handbill recited:

"THE FACTS (as stated by N.L.R.B.) "THE ELECTION CONDUCTED ON NOV. 1, 1972 WAS SET ASIDE BECAUSE THE NATIONAL LABOR RELATIONS BOARD FOUND THAT CERTAIN CONDUCT OF THE EMPLOYER INTERFERED WITH THE EMPLOYEES' EXERCISE OF A FREE AND REASONED CHOICE. THEREFORE, A NEW ELECTION WILL BE HELD IN ACCORDANCE WITH THE TERMS OF THIS NOTICE OF ELECTION. ALL ELIGIBLE VOTERS SHOULD UNDERSTAND THAT THE NATIONAL LABOR RELATIONS ACT, AS AMENDED, GIVES THEM THE RIGHT TO CAST BALLOTS AS THEY SEE FIT, AND PROTECTS THEM IN THE EXERCISE OF THIS RIGHT, FREE FROM INTERFERENCE BY ANY OF THE PARTIES."

At the top of the handbill was printed a sketch, headed by the word, "FOUL!" in large letters. The sketch showed two boxers in a ring, one labeled "COMPANY," and the other labeled "EMPLOYEE." It showed the boxer labeled "COMPANY" striking a devastating foul blow below the belt of the boxer labeled "EMPLOYEE." At the moment, a figure dressed as Uncle Sam, standing between the fighters, called "FOUL!" At the side of the sketch in large black-face print were the words: "When Uncle Sam is the referee, no fouls allowed. Uncle Sam says, 'no decision,' finds company guilty of striking foul blow, orders new election." At the bottom of the sketch is pictured an arm with hand in boxing glove, on which there are the words: "VOTE YES" and in between these words the statement: "HERE'S YOUR KNOCKOUT PUNCH." The sketch was signed at the bottom: "ALLIED INDUSTRIAL WORKERS OF AMERICA."

On the second handbill was a sketch of an employer saying to an employee: "FOR YOUR LOYAL AND FAITHFUL SERVICE TO THE COMPANY, I AM PROUD TO PRESENT YOU WITH THIS 15 YEAR AWARD, . . . CONGRATULATIONS!" The employee is pictured replying: "THANKS BOSS, I HOPE I WILL BE WITH THE COMPANY FOR ANOTHER 15 YEARS!" Alongside this sketch is another labeled, "LATER . . ." showing the employee reading a notice taken from his mailbox stating: "Your services are no longer needed with the company. Your final payroll check is enclosed. . . . Your Boss." The caption under the sketch states: "WHAT HAPPENS IF YOU ARE FIRED?" followed by "BE WISE . . . ORGANIZE FOR JOB SECURITY. It DOESN'T COST . . IT PAYS TO BE A MEMBER OF THE A.I.W." This second flyer distributed by the Union allegedly depicted the experience of a former employee named Curtis. Curtis had quit the employment of the Company of his own volition, without any complaint. When, later, he wished to be reemployed, his later attempt to withdraw his resignation was refused. There was no violation of any rights of Curtis by the Company; and the circulation of the flyer by the Union depicting him as, first, being thanked by the Company for his loyal service of 15 years, and receiving an award for such service, and his receiving, immediately after from his mailbox, a notice that he was fired and his final check was being enclosed was a misrepresentation calculated to show the Company's bad faith, cruel treatment of an old and trusted employee, and deceit to the latter's immense disadvantage. The flyer was false and intended to destroy all confidence of the employees in the honesty, fairness and business decency of the Company.

During the election, one of the employees stated that the Company's profits for the previous year had amounted to three million, seven hundred thousand dollars. This was approximately twenty-five times the amount of profits that the Company had made that year.

The Regional Director who recommended that the employee's objections

be overruled in their entirety, did not even talk with the Union Business Agent, who chaired the meeting, to ascertain whether the employee who made the statement that the employer's profits were twenty-five times more than they actually were, was or was not an in-plant organizer.

In the election the members selected the Union as their representative. The Company, claiming that the certification of the Union as representative was predicated on an unlawful election, technically refused to bargain because of the conduct of the Union heretofore set forth. The Company charged the foregoing activities of the Union vitiated the election, and filed objections to the validity of the election. The Board then, without holding a hearing, found the Company in violation of Sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act. The Company filed a petition for review. The Regional Director overruled the Company's objections to the conduct of the Union in their entirety, and the Board thereupon adopted the Regional Director's decision, without affording the Company a hearing.

On April 19, 1974, the employer petitioned this Court for review of the Board's order; and the Board, on June 7, 1974, filed its cross-application for enforcement of its order.

The contention of the employer is that the Union published and distributed materials which invoked Board processes, and contained such deliberate and contemptible misrepresentations that they prevented the holding of a free and fair election.

The Regional Director's Report and the Recommendations on Objections (hereinafter referred to as "Report"), while admitting that the Union did attribute statements to the Board, which the Board did not in fact make, nevertheless, did not sustain the employer's objection. The Regional Director found "special circumstances in this case which may mitigate such improper use." The Regional Director found those special circumstances to be:

1. That the impression is not left through official documents or seals that the Board is favoring one side or another.
2. There was no sufficient impact on the electorate.
3. The entire document was reasonably accurate.
4. The employees could interpret the materials as election propaganda.
5. The employer had an adequate opportunity to respond.

From the facts above recited, it is obvious that the employer did not have an opportunity to respond to all of these false statements, and scurrilous materials. The Union had more than three months to organize and prepare the false pamphlets. When they were circulated on the Friday before the election to be held on Monday, the employer had only Saturday to answer all these statements and innuendos to some of the employees when many were absent from the plant, and on the Monday morning before the election that was to take place that afternoon. The action of the Union was conceived with the unfair intention of depriving the employer of a fair chance to respond to the false charges.

It is our conclusion that the representations made by the Union in its handbills misrepresented the facts, and were deliberately dishonest, and made at the last moment before the election with the intention that the voters would rely on them as being truthful and, upon this reliance, vote against the employer.

The Company did not commit any of the acts attributed to it by the Union in its handbills. There was no evidence that Uncle Sam, or the Government, claimed the Company was guilty of any foul play against the employees, as was represented by the handbills.

From the evidence it clearly appears that the Union, by publishing and distributing campaign materials containing false statements and invoking the Board as making statements which it never made, prevented the holding of a free and fair election. While the Board ac-

knowledges that it consistently and zealously makes every effort to prevent any party from suggesting, either directly or indirectly, to the voters that it endorses a particular choice, nevertheless it made a determination as to the effect of the language in the documents on the employees' minds without taking any testimony.

In Allied Electric Products, 34 LRRM 1538, the Board said:

"The Board is necessarily concerned with the protection of its procedures designed to provide fair elections. The Board particularly looks with disfavor upon any attempt to misuse its processes to secure partisan advantage, and especially does it believe that no participant in a Board election should be permitted to suggest either directly or indirectly * * * that this Government Agency endorses a particular choice."

In Mallory Capacitor Co., 161 NLRB No. 127, the Board said:

"We do not agree with the Regional Director's conclusion that the circulated document did not interfere with a fair election."

In the foregoing case, after the Regional Director issued a complaint and notice of hearing, the Labor Union distributed a copy of the complaint to the employees which was prepared by a photographic process containing, in part, an altered reproduction of the complaint. As the Board, in *Mallory*, said:

"The alteration consisted of cutting out parts of the complaint and reconstructing the remaining parts so as to produce a document consisting primarily of the alleged unlawful conduct and the conclusionary allegation that they constituted violation of the Act. Deleted from the document were portions which indicated it was not a final judgment of the Board, which gave notice that the Employer would have the right to appear in person or otherwise, and give testimony. The signature of the Regional Director was included in the altered document. Add-

ed to the document, and appearing at the top of the first page, was a picture of Uncle Sam pointing a finger and, in large printing, the words 'Uncle Sam says "Mallory Bosses Guilty." ' The document also included a copy of a letter entitled 'An Open Letter To: Mr. Ruggles, Plant Manager.' The penultimate paragraph of said letter reads as follows: 'Mr. Ruggles you are only trying to get us to vote against ourselves. Why don't you start being honest with your employees and respect our intelligence. For you have already been found guilty by the United States Government for your conduct in the election.' "

The Board concluded:

"The Board is necessarily concerned with the protection of its procedures designed to provide fair elections. It particularly looks with disfavor upon any attempt to misuse its processes to secure partisan advantage. And, plainly, we cannot sanction the reproduction of a Board document which is altered for campaign purposes and used under circumstances where it is reasonably calculated to mislead employees into believing that the Board has judged the Employer to have violated Federal law whereas, in truth, it has only made allegations which have yet to be proved. We shall set aside the election and order a new one."

See, to the same effect, N.L.R.B. v. John S. Barnes Corporation, 478 F.2d 1105 (1973) (C.A. 7); Thiokol Chemical Corporation, 82 LRRM 1583 (1973); Dubie-Clark Company, 209 N.L.R.B. No. 21 (1974).

From all the foregoing, the election to which the employer objects was, without question, an unfair election in every sense of the word.

The petitioner employer's request that this Court enter an Order denying enforcement of the Board's Order, which is before the Court on Petition to Review, is hereby granted.