887 F.2d 109
 132 L.R.R.M. (BNA) 2630, 133 L.R.R.M. (BNA) 2744,
113 Lab.Cas. P 11,536
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
and
International Union, United Plant Guard Workers of America
(UPGWA), Intervenor,
v.
HYATT HOTELS, INC., d/b/a Hyatt Regency Flint, Respondent.
 No. 88-6006.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 12, 1989.
Decided Oct. 10, 1989.
Rehearing Denied Nov. 21, 1989.
 
 Aileen A. Armstrong, Deputy Associate Gen. Counsel, David Seddelmeyer (argued), N.L.R.B., Washington, D.C., for N.L.R.B.
 Jeffrey J. Ellison, Gregory, Moore, Jeakle & Heinen, Detroit, Mich., for Intern. Union, United Plant Guard Workers of America (UPGWA).
 Bradley T. Raymond (argued), Southfield, Mich., for Hyatt Hotels Inc.
 Before JONES and RYAN, Circuit Judges, and PECK, Senior Circuit Judge.
 JOHN W. PECK, Senior Circuit Judge.
 
 
 1
 Petitioner, the National Labor Relations Board (the Board), seeks enforcement of its unfair labor practice order against Respondent, Hyatt Hotels, Inc., d/b/a Hyatt Regency Flint (Hyatt), requiring Hyatt to bargain with Intervenor International Union, United Plant Guard Workers of America, Local 117 (the Union).
 
 
 2
 On May 13, 1987, the Union filed a representation petition with the Board, seeking to represent Hyatt's ten security employees. During the election campaign, one of the security employees, Mark Williams, acted as the Union's contact person and was responsible for providing information to the other security employees. The Union mailed Williams an official Board form with the caption "Notice to Employees from the National Labor Relations Board," with instructions to distribute copies to the other security employees. The Notice states, inter alia, "The National Labor Relations Board as an agency of the United States Government does not endorse any choice in the election." There is a boldface capitalized statement at the bottom of the form that "this is an official government notice and must not be defaced by anyone." Williams posted a copy of the unaltered notice on the security office bulletin board and left several copies on the desk in that office.
 
 
 3
 Within days prior to the election, Williams posted two signs on a glass-enclosed bulletin board reserved for another union at Hyatt (which is not in any way affiliated with the Union). The bulletin board was located approximately ten feet from the security employees' work area, and they passed it every day. Each sign was a composite, consisting of an official Board caption reading "Notice to Employees from the National Labor Relations Board," with a separate piece of paper fastened beneath the caption containing a pro-union message handwritten in blue, red, yellow, black and green broad-tip felt markers. The first sign read:
 
 Security
 Vote
 Monday
 June 22
 
 4
 Voteing [sic] times 7:00 a.m. to 7:30 a.m.
 
 
 5
 and
 
 
 6
 2:45 p.m. to 3:15 p.m.
 
 United we stand/Divided we Fall
 
 7
 The word "Security" was written diagonally several times around the words "Vote Monday." The second sign read:
 
 
 8
 It is the individual who is not interested in his fellow men who has the greatest difficultie [sic] in Life and provides the greatest injury to others. It is from among such individuals that all Human Failure steams [sic].
 
 
 9
 Security Dept.
 
 Union
 VOTE
 Monday June 22
 7:00 a.m. to 7:30/2:45 to 3:15
 
 10
 There were several blue lines drawn radiating from the word "VOTE" with the word "union" written several times around the radiant lines. The party responsible for the postings was not identified on either sign.
 
 
 11
 The representation election was held June 22, 1987, and the Union was the only candidate seeking to represent the security employees. Of ten ballots cast, seven were for, and three against, representation by the Union. Hyatt timely filed with the Board objections to the posting of the two signs, claiming that they affected the results of the election by indicating to employees that the Union had the endorsement of the Board. A hearing officer concluded that the alterations to the Board Notice were obvious homemade additions, clearly not sanctioned by the Board. He recommended overruling Hyatt's objections to the election results.
 
 
 12
 On March 9, 1988, the Board adopted the hearing officer's recommendation and certified the Union as representative of Hyatt's security employees. The Board agreed with the hearing officer that the altered Board documents were not objectionable because "they did not have the tendency to mislead employees into believing that the Board favored one party's cause." The Board found it unnecessary to determine whether the Union was responsible for preparing the signs.[1] Since March 16, 1988, the Union has requested Hyatt to recognize it and to bargain, and since March 16, 1988, Hyatt has refused. The Union filed unfair labor practice charges with the Board, alleging violations of Sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act, 29 U.S.C. Secs. 158(a)(1) & (5). The Board's General Counsel issued a complaint based on the charge. Following transfer of the proceeding to the Board, the Board on June 8, 1988 granted summary judgment against Hyatt and issued a bargaining order, for which the Board now seeks enforcement pursuant to 29 U.S.C. Sec. 160(e).[2]
 
 
 13
 The Board is generally accorded wide discretion in establishing and administering representation election rules. See NLRB v. A.J. Tower Co., 329 U.S. 324, 330, 67 S.Ct. 324, 327, 91 L.Ed. 322 (1946); Tony Scott Trucking, Inc. v. NLRB, 821 F.2d 312, 313 (6th Cir.1987). However, the courts are responsible for ensuring that "the Board keeps within reasonable grounds." Universal Camera Corp. v. NLRB, 340 U.S. 474, 490, 71 S.Ct. 456, 466, 95 L.Ed. 456 (1951). The Board's findings of fact are conclusive "if supported by substantial evidence on the record considered as a whole." 29 U.S.C. Sec. 160(e). Whether substantial evidence supports the Board's findings must be analyzed with particular care when the election results are close or the bargaining unit is small. John M. Horn Lumber Co. v. NLRB, 859 F.2d 1242, 1244 (6th Cir.1988); Hickman Harbor Services v. NLRB, 739 F.2d 214, 220 (1984).
 
 
 14
 We are charged with the task of evaluating whether substantial evidence supports the Board's conclusion that the postings did not have the tendency to mislead employees to believe that the Board favored the Union's cause. SDC Investment, Inc., 274 N.L.R.B. 556 (1985). Because the postings may have tended to mislead employees to believe that the Board favored the Union, we deny the Board's petition for enforcement of the bargaining order. We do not comment on the validity of SDC Investment and its progeny to the extent that they may depart from any longstanding per se rule invalidating Board elections when alterations are made to Board documents during a representation election campaign.[3]
 
 
 15
 Beginning with Allied Electric Products, Inc., 109 N.L.R.B. 1270, 1272 (1954), when a party used an altered Board document or ballot as part of its campaign propaganda, such conduct was generally found per se objectionable and grounds for automatically setting aside representation election results. E.g., GAR Corp. 234 N.L.R.B. 1209 (1978); Mercury Industries, Inc., 238 N.L.R.B. 896 (1978); Ona Corp., 235 N.L.R.B. 595 (1978); J. Ray McDermott & Co., 215 N.L.R.B. 570 (1974); Rebmar, Inc., 173 N.L.R.B. 1434 (1968); see C.J. Krehbiel Co. v. N.L.R.B., 844 F.2d 880, 883 (D.C.Cir.1988). Courts historically denied enforcement of bargaining orders when the Board deviated from the per se rule. E.g., Monmouth Medical Center v. NLRB, 604 F.2d 820 (3d Cir.1979); Lake Odessa Machine Products, Inc. v. NLRB, 512 F.2d 762 (6th Cir.1975).
 
 
 16
 In Midland National Life Insurance Co., 263 N.L.R.B. 127 (1982), the Board determined that it would no longer set aside elections on the basis of misleading statements made during election campaigns. Id. at 133. In Riveridge Hospital, 264 N.L.R.B. 1094 (1982), modified on other grounds, 789 F.2d 524 (7th Cir.1986), the Midland ruling was extended to encompass misrepresentations of Board actions. Id. at 1094. This policy was again extended in SDC Investment, supra. The union in SDC Investment prepared and circulated a leaflet shortly before a representation election which on one side displayed a hand printed Spanish translation of the official election ballot with a facsimile of the official Board seal and a written message in Spanish to "vote yes"; on the reverse side was an unaltered photocopy of the Board's official English-language ballot. Spanish-language ballots were not requested by either party and were not offered by the Board for the election. The Board stated that "the crucial question should be whether the altered ballot in issue is likely to have given voters the misleading impression that the Board favored one of the parties to the election." Id. at 557.
 
 
 17
 Rejecting its prior per se approach, the Board in SDC Investment adopted a two-pronged test for examining whether use of a Board document in campaign material compromises the Board's neutrality and therefore constitutes grounds for setting aside an election. First, if the campaign material on its face clearly identifies the party responsible for its preparation, then it is not a basis for setting aside an election. Id. Second, if the source of the document is not clearly identified, "it becomes necessary to examine the nature and contents of the material in order to determine whether the document has the tendency to mislead employees into believing that the Board favors one party's cause." Id. Because the leaflet failed to identify the party responsible for its preparation, the Board examined the nature and contents of the leaflet to determine whether "it was likely to give the voters the misleading impression that the Board favored" the union in the election. Id. at 558. The Board concluded that the presence of the Board's seal, and the copy of the official Board ballot on the reverse side of the leaflet, along with the fact that no official Spanish-language ballots were available, made it possible that employees would assume that the ballot was officially prepared by the Board. Therefore, circulation of the leaflet was likely to lead Spanish-speaking voters to believe that the Board endorsed the union. The Board determined that the union had engaged in objectionable conduct warranting the setting aside of the election. Id.
 
 
 18
 As in SDC Investment, the altered Board document here does not indicate on its face the party responsible for its preparation. Therefore, we turn to the second prong of the test and "examine the nature and contents of the material in order to determine whether the document has the tendency to mislead employees into believing that the Board favors one party's cause." Id. at 557. Although the signs may have been somewhat inartfully prepared, they clearly conveyed the message that the Board supported the Union in the election. As the Board noted in Allied Electric Products, Inc., supra, the reproduction of a Board document that purports to be official but is in fact an alteration of the original official document "necessarily, at the very least, must tend to suggest that the material appearing thereon bears this Agency's approval." Id., 109 N.L.R.B. at 1272 (emphasis added).
 
 
 19
 The Board's contention that the postings did not taint the election is premised on its finding that the security employees could not reasonably have believed that the signs were prepared or sanctioned by the Board. The appropriate inquiry, however, is not into the reasonableness of employees' potential beliefs, but rather a much narrower determination as to the tendency of a document to mislead. As stated previously, these documents conveyed a clear message: that the Board was urging employees to vote for the Union. With no testimony in the record by any of the security employees concerning their actual interpretation of the documents, it is nothing more than speculation to state that none of the employees, who are not familiar with ordinary election procedures and documents, at least harbored the thought that the documents were approved by the Board and thus were swayed to vote for the Union.
 
 
 20
 Board decisions subsequent to SDC Investment which permit election results to stand in spite of certain acts of defacement of official Board documents do not invalidate the conclusion that there was a tendency to mislead employees in this case. In most of those cases, handwritten alterations were made to Board sample ballots, urging employees to vote a certain way in an upcoming election. Baptist Home for Senior Citizens, Inc., 290 N.L.R.B. No. 131, 130 LRRM (BNA) 1049 (1988); BIW Employees Federal Credit Union, 287 N.L.R.B. No. 45, 127 LRRM (BNA) 1098 (1987); Worths Stores Corp., 281 N.L.R.B. 1191 (1986); Rosewood Mfg. Co., 278 N.L.R.B. 722 (1986). There were facts unique to each case reducing the tendency of the documents to mislead employees into thinking that the Board endorsed the documents' contents. Furthermore, a marked sample ballot is more easily identifiable as propaganda than an altered form which purports to be a notice from the Board. The sole Board case on point that does not concern an alteration of a sample ballot is C.J. Krehbiel Co., supra, 279 N.L.R.B. 855 (1986), aff'd, 844 F.2d 880 (D.C.Cir.1988). The disputed document in Krehbiel was a copy of a portion of an administrative law judge's decision, which the union had embellished with partisan annotations and cartoon drawings.[4] Finding that "[n]o reasonable employee would believe that an administrative law judge would embellish his decision with cartoons, slogans, and crowing roosters," and commenting on the lack of integration of the added materials into the judicial opinion, the Board rejected the argument that the contested document might have tended to mislead employees.[5] Id. at 855. By contrast, the document in the present case was actually presented to employees as a notice from the Board, containing information of the sort that employees could have believed would ordinarily be supplied by the Board. Therefore, we conclude that under the Board's test the documents in this case are objectionable for their tendency to mislead employees to believe that the Board endorsed the Union in the election.
 
 
 21
 The Board also argues that alteration of the Notices necessarily would have been interpreted as a partisan effort because the official Notice, which was available to all security employees, contained a statement that the Board does not endorse any choice in the election. This argument is rejected for the simple reason that employees may not have read the entire Board document or may not have remembered or comprehended this cursory disclaimer which is buried in an unassuming paragraph at the bottom of the Notice. Moreover, employees may well have believed that blank forms with an identical caption were available for use by the Board whenever the Board wished to disseminate information to employees. We also note in this regard that the official Notice warns against defacement of the Notice, so that an employee who carefully compared the original with the altered postings might come to the conclusion that the altered Notices must have been the work of the Board itself.
 
 
 22
 Accordingly, the Board's petition for enforcement is DENIED.
 
 
 23
 RYAN, Circuit Judge, dissenting.
 
 
 24
 With very considerable reluctance, I must disagree with my colleague, Judge Peck, and vote to grant the Board's petition. If I were free to do so, I would conclude that the notice posted by Williams very likely had "the tendency to mislead employees into believing that the Board favors [the Union] cause." SDC Investment, Inc., 274 N.L.R.B. 556 (1985). But our review of decisions reached by the National Labor Relations Board is governed by the long established principle that "the Board's findings of fact are conclusive 'if supported by substantial evidence on the record considered as a whole.' " NLRB v. Superior Coatings, Inc., 839 F.2d 1178, 1180 (6th Cir.1988) (quoting 29 U.S.C.A. Sec. 160(e) (1973)). We may not substitute our judgment for that of the Board even where we would have reached a different conclusion had the case been before us on de novo review. NLRB v. St. Marys Foundry Co., 860 F.2d 679, 681 (6th Cir.1988).
 
 
 25
 Applying this standard to the case before us, I am obligated to uphold the Board's finding that the altered sign did not have a tendency to mislead employees into believing that the Board endorsed the Union. The hearing officer, whose findings were adopted by the Board, made a factual finding to the contrary. He supported this decision as follows:
 
 
 26
 The notices were crudely hand written with felt pens of several different colors. They were placed over the bottom portion of Form NLRB-666, with its block letters professionally printed in blue ink. Luann Mrohs, an Employer witness, testified that the notices which Williams posted were not composites involving Board documents, only handwritten pages placed over the official, printed document. Although the remaining, visible portion of the official form stated, "NOTICE TO EMPLOYEES FROM THE NATIONAL LABOR RELATIONS BOARD," Williams' hand written documents were obviously not part of the Board form.
 
 
 27
 Neither respondent nor the court disputes any of the facts which the hearing officer cited in support of his factual conclusion that the documents did not have a tendency to mislead employees into believing the Board supported the Union. Because the above-cited facts constitute substantial evidence in support of the Board's finding, I believe that this court must uphold it.
 
 
 
 [1]
 We do not address the issue of the Union's responsibility for the signs, as that issue has not been addressed by Petitioner or Respondent
 
 
 [2]
 The June 8, 1988 decision and order of the Board is reported at 289 N.L.R.B. No. 3, 130 LRRM (BNA) 1413 (1988)
 
 
 [3]
 Hyatt urges this court to reject SDC Investment and its progeny and retain the per se approach. Because we hold that the election would be invalid under the test annunciated in SDC Investment, we need not address this alternative ground for denial of enforcement
 
 
 [4]
 A reproduction of the document is contained in Appendix A of the D.C. Circuit opinion. See C.J. Krehbiel Co. v. N.L.R.B., 844 F.2d 880, 887 (D.C.Cir.1988)
 
 
 [5]
 We observe that, in spite of the language quoted above, the Board in C.J. Krehbiel did not adopt a "reasonable employee" standard, but rather adhered to the test established in SDC Investment, supra, whether there was a tendency to mislead employees to believe that the Board favored one party's cause. C.J. Krehbiel Co., 279 N.L.R.B. at 855. The D.C. Circuit expressed its puzzlement regarding the Board's use of "reasonable employee" language. 844 F.2d at 885