**REVCO D.S., INC. (DC), Petitioner and Cross-Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent and Cross-Petitioner.**

Nos. 86–5848, 86–5961.

United States Court of Appeals, Sixth Circuit.

Oct. 2, 1987.

James P. Cobb (argued), Monica M. Bekken, James W. Wimberly, Jr., Wimberly, Lawson and Cobb, Atlanta, Ga., for petitioner and cross-respondent.

Elliott Moore, Deputy Associate General Counsel, N.L.R.B., Washington, D.C., Barbara A. Atkin, Patrick Szymanski (argued), Thomas C. Hendrix, Director, Region 17, N.L.R.B., Kansas City, Kan., for respondent and cross-petitioner.

Before LIVELY, Chief Judge, KEITH, Circuit Judge, and DOWD, District Judge.*

LIVELY, Chief Judge.

The employer, Revco, petitions for review of a decision and order of the National Labor Relations Board, and the Board has filed a cross-application for enforcement. In its decision the Board found that Revco violated sections 8(a)(5) and (1) of the National Labor Relations Act, as amended, 29

---

* The Honorable David Dowd, Judge, United States District Court for the Northern District of Ohio, sitting by designation.

U.S.C. §§ 158(a)(5) and (1) (1982) (the Act), by refusing to recognize and bargain with Teamsters Local No. 955, the statutory representative of the employees at one of its warehouses. The order required Revco, inter alia, to bargain with the union. 280 NLRB No. 22 (May 30, 1986).

## I.

This case involves two representation elections. The union won the first election, held on December 18, 1984, by a vote of 33 to 24. After Revco filed objections to the election and the Regional Director ordered a hearing on the objections, the union agreed that the election should be set aside and a new one held. The Regional Director then determined that a hearing on Revco's objections was unnecessary and entered an order setting aside the first election and scheduling a new one. Revco filed objections to this order, arguing that it had raised substantial questions about the first election which should be resolved before another election was conducted. It also maintained that a "cooling off period" of at least six months should be observed before the second election in order to remove the taint of alleged misconduct in the period prior to the first election. The Board overruled Revco's objections and entered an order setting the election aside and directing that a second election be held "whenever the Regional Director deems appropriate."

The second election was held on April 19, 1985, and the union won by a single vote, 25 to 24. Revco again filed objections and a hearing was conducted by a hearing officer. The hearing officer dealt with each of Revco's objections and recommended that they be overruled in their entirety. The Board then issued a supplemental decision adopting the hearing officer's findings and recommendations, and certified the union as the exclusive bargaining representative of the employees. Following Revco's refusal to bargain with the union, the Regional Director issued the complaint which resulted in the decision and order now under review.

## II.

Revco raises two issues in this court. It contends that the second election should have been set aside because of union violence, threats and promises of benefits during the pre-election period. It also argues that the Board erred in ordering a second election without remedying misconduct that occurred prior to the first election. Revco maintains that the Board erred as a matter of law in finding that members of the organizing committee were not agents of the union. Although the Board adopted the hearing officer's finding that the employees whose conduct is relied upon by Revco were not agents of the union, the Board stated in its supplemental decision that it had not relied on this finding. Instead the Board expressly held "that even assuming the employees involved were agents of the Union, they did not engage in conduct which would require setting aside the election."

## A.

Revco argues that the Board should have considered incidents that occurred prior to the first election in determining whether union actions destroyed the "laboratory conditions" under which these elections should be held. However, since we have concluded that an incident in the period prior to the second election had an impermissible effect, we will not consider conduct that took place before the first election which the Board set aside.

We believe the hearing officer's findings with respect to two of the three incidents relied upon by Revco are supported by substantial evidence. Jan Brickey, an outspoken opponent of the union, and Debbie Venerable, a union supporter and member of the organizing committee, engaged in two encounters, one verbal and the other physical. Both occurred in the "critical period" between the two elections. In the first incident, Venerable threatened Brickey and during the second encounter Venerable assaulted Brickey. Both employees were discharged for-fighting, though Venerable was clearly the aggressor. While we do not consider it separately, we note

that Venerable engaged in an argument and near fight with another anti-union employee during the period prior to the first election.

The hearing officer found that the combatants had not gotten along for some time and that the union was not mentioned during either altercation. Since the discharge occurred approximately two months prior to the second election, the hearing officer concluded that this was a sufficient cooling off period to remove any atmosphere of fear or intimidation. Although it would be reasonable to reach a different conclusion on the basis of this record, we cannot reverse a Board decision just because we view the evidence differently. We review Board findings under the substantial evidence standard. In order to set aside a representation election, a party must show not only that the opposing party committed unlawful acts, "but also that they interfered with the employees' exercise of free choice to such an extent that they materially affected the results of the election." *N.L.R.B. v. Bostik Division, USM Corp.*, 517 F.2d 971, 975 (6th Cir.1975), quoting *N.L.R.B. v. Golden Age Beverage Co.*, 415 F.2d 26, 30 (5th Cir.1969). Revco did not carry its burden with respect to the two Venerable Brickey incidents.

### B.

A far more serious incident occurred on the day of the second election. Wayne Hanna, a member of the organizing committee, offered to pay Sandy Crosby, an anti-union employee $100 to vote for the union. These two employees worked in the same department. After the first election Crosby told Hanna that she was against the union, and Hanna tried several times to talk her into supporting the union. The hearing officer found that Hanna made the offer to Crosby immediately before the polls opened for the second election, though Hanna denied the incident. Another employee who was present corroborated Crosby's testimony.

The hearing officer found that Hanna was joking when he made the offer. This conclusion was based on Crosby's reply: "[G]ive me the $100 and you won't know which way I vote," and the fact that none of the three employees discussed the matter further. The hearing officer characterized this conversation as a "witty exchange rather than a serious offer and acceptance." This determination was made in spite of Crosby's testimony that Hanna was "straight-faced, said it serious as can be," and that she believed him. Crosby testified that she and Hanna never joked about the question of union representation. In fact, Hanna had been persistent in his efforts to persuade Crosby over a period of several months to support the union. Most important, perhaps, is the fact that Hanna himself did not claim that he had jokingly offered Crosby $100; he denied that the incident had occurred. On the entire record we conclude that the finding of the hearing officer, adopted by the Board, that Hanna was only joking when he offered Crosby money to vote for the union is not supported by substantial evidence.

Revco presented no evidence tending to show that Hanna had actual authority from the union to offer money in exchange for an employee's favorable vote. However, Crosby, the employee to whom the offer was made, had been present at a meeting where Hanna was elected a member of the organizing committee. Crosby testified that two union officials told the employees during that meeting that the members of the organizing committee were the ones to go to with any questions about the union. Another witness who was at the meeting testified that it was the duty of the organizing committee to get people who hadn't signed cards to sign them and to try to change the "no" votes to "yes." While mere membership on an organizing committee is not sufficient to establish agency, we find that more than mere membership was shown in this case. As noted, the Board did not adopt the hearing officer's finding that the employees involved in the incidents that formed the basis of Revco's objections to the election were not union agents. We think it is clear from the entire record that Hanna had apparent authority to act and speak for the union and that Crosby acted reasonably in viewing

Hanna as an agent of the union. As we stated in *Kitchen Fresh, Inc. v. N.L.R.B.*, 716 F.2d 351, 355 (6th Cir.1983), "[a]n employee's conduct may also be attributed to the union if the objector can demonstrate that the union has clothed the employee with apparent authority to act on behalf of the union." (Citations omitted).

### III.

The union won the second election by one vote. Hanna offered money to Crosby in the presence of another employee who fully supported Crosby's version of the incident. It is difficult to imagine an act more likely to contaminate an election than an offer to buy votes. The hearing officer commented that the exchange between the two employees did not appear to be "a serious offer and acceptance." Of course there was no acceptance because Crosby refused to agree to sell her vote. She did, however, consider Hanna's offer to be an extension of his previous efforts to win her over to the union cause—one purpose for which the organizing committee was formed.

In *N.L.R.B. v. Savair Mfg. Co.*, 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973), the Supreme Court held that it was impermissible for a union to offer to waive an initiation fee for employees who signed "recognition slips" before an election while providing that if the union won the election those who had not signed in advance would be required to pay the fee. The Court found that permitting this practice would allow the union "to buy endorsements and paint a false portrait of employee support during its election campaign." *Id.* at 277, 94 S.Ct. at 499. Writing for the majority, Justice Douglas pointed out that section 7 of the Act gives employees not only the right to "form, join, or assist" unions but also the right to "refrain from any or all of such activities." *Id.* at 278, 94 S.Ct. at 499. In *Savair* the union won the election by a vote of 22 to 20. The court of appeals denied enforcement of the Board's bargaining order, and the Supreme Court affirmed.

This court has applied *Savair* to cases where a union has made cash payments to employees during an election campaign as well as to cases involving improper waiver of fees. In *Plastic Masters, Inc. v. N.L.R.B.*, 512 F.2d 449 (6th Cir.1975), we denied enforcement of a bargaining order because a union made excessive cash payments to an employee to serve as an election observer. In doing so, this court quoted with approval the finding in *Collins & Aikman Corp. v. N.L.R.B.*, 383 F.2d 722, 729 (4th Cir.1967), that "such conduct undoubtedly had a tendency to influence the election results." 512 F.2d at 450. In *N.L.R.B. v. Madisonville Concrete Co.*, 552 F.2d 168 (6th Cir.1977), this court applied the *Savair* rule in denying enforcement of a bargaining order where the union had paid to take care of a traffic ticket for a bargaining unit employee immediately before the election. This court rejected the finding of a hearing officer, adopted by the Board, that the union's conduct had not "interfere[d] with the employees' free and untrammeled choice in the election." *Id.* at 169.

The bargaining unit in this case was small. One election had already been set aside when the union chose not to contest Revco's objections. Feelings ran high, as shown by evidence of a number of confrontations between pro and anti-union employees. Hanna, a designated spokesman for the union, had waged a campaign to convert Crosby to the union cause. Less than an hour before voting in the second election began, as the hearing officer found, Hanna offered Crosby $100 to vote in favor of the union. This finding was made in the face of Hanna's outright denial that such an incident had occurred. No one testified that Hanna appeared to be joking; in fact, the only testimony was that he appeared to be serious. There is no support in the record for the hearing officer's finding that the offer was made in jest. Except for this unsupported finding the Board would have been compelled to hold that the union conduct had at least "a tendency to interfere with the employees' free and untrammeled choice in the election."

As is so often the case, neither the hearing officer nor the Board cited any case from this court dealing with objections similar to those made by Revco in the present

case. Instead, they relied on cases in which the Board reached a different result. Revco's petition for review is granted and the Board's order finding the employer in violation of sections 8(a)(5) and (1) of the Act is set aside; the Board's cross-application for enforcement is dismissed, and enforcement is denied. Revco will recover its costs on appeal.