**The JOHN M. HORN LUMBER CO.,
Petitioner, Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent,
Cross–Petitioner,**

**Ohio Valley Carpenters, Intervenor.**

Nos. 86–6209, 87–5143.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 3, 1987.
Decided Oct. 20, 1988.

Bruce A. Hoffman (argued), Cincinnati, Ohio, for petitioner, cross-respondent.

Elliott Moore, Deputy Associate General Counsel, N.L.R.B., Washington, D.C., Judith Dowd, (argued), Charles Donnelly, Peter Winkler, for respondent, cross-petitioner.

D.M. Silberman, Washington, D.C., for intervenor.

Before ENGEL, Chief Judge,* KENNEDY, Circuit Judge, and EDWARDS, Senior Circuit Judge.

ENGEL, Chief Judge.

The John M. Horn Lumber Company petitions for review of a National Labor Relations Board order, finding that it violated sections 8(a)(1) and (a)(5) of the National Labor Relations Act (NLRA) 29 U.S.C. § 158(a)(1) and (a)(5)) by refusing to bargain with the United Brotherhood of Carpenters, Ohio Valley Carpenters District Counsel, Local Union No. 415, AFL–CIO (Union), as the certified representative of its employees. Horn Lumber admits that it has refused to bargain with the Union but claims that the Union was improperly certified by the Board. The Board cross-petitions for enforcement of its order. We deny enforcement.

Horn Lumber, an Ohio corporation, manufactures wood products in its factory located in Hamilton, Ohio. The union filed a petition with the Board seeking certification as the exclusive bargaining representative for a bargaining unit consisting of thirty-six production employees, maintenance employees and all truck drivers employed by Horn Lumber at its Hamilton facility. In an election held on May 23, 1985 nineteen employees voted for the union while seventeen cast ballots against it.

Horn Lumber filed timely objections to the election claiming that the union had created an atmosphere of fear and intimidation which prevented a fair election. Hearings were held on July 11 and 17, 1985. The hearing officer issued a report

* The Honorable Albert J. Engel assumed the duties of Chief Judge effective April 1, 1988.

and recommendation to the Board on October 11, 1985 listing several problems in the election process (described in more detail below) but ultimately recommended that the Board not set aside the election. Horn Lumber filed its exceptions to the hearing officer's report and recommendation, arguing that based upon the hearing officer's findings of fact, the election should be set aside.

On June 24, 1986 the Board adopted the hearing officer's findings and recommendations and certified the union as the exclusive bargaining representative for the bargaining unit. The Board's chairman, however, dissented, finding that two of Horn Lumber's objections were grounds for setting the election aside. 280 N.L.R.B. 69 (1986).

The Union filed a refusal to bargain charge with the Board on July 11, 1986. In August of 1986, General Counsel of the Board issued a complaint against Horn Lumber alleging that Horn Lumber had violated sections 8(a)(1) and (a)(5) of the NLRA. Horn Lumber admitted in its answer that it had refused to bargain with the Union but defended its action on the basis that the Union was improperly certified. General Counsel moved for summary judgment. The Board granted the General Counsel's motion on November 13, 1986. The Board's order required Horn Lumber to cease refusing to bargain with the Union, cease interfering with employees' exercise of rights guaranteed them by section 7 of the NLRA, and to bargain with the union on request.

Horn Lumber filed its petition for review of the Board's order with us on November 18, 1986. The Union filed a motion to intervene which we granted. The Board cross-petitioned for enforcement of its order.

Our standard of review is whether the Board's decision is supported by substantial evidence. The Board's finding of fact that there was not an atmosphere of tension and coercion preventing a fair and free election must be upheld if supported by substantial evidence in the record considered as a whole. Upon consideration, however, we find that the Board's finding is not supported by substantial evidence and hold that a new election must be held.

The cross-petitions focus particularly upon two incidents discussed in the hearing officer's report and recommendation to the Board. The first incident concerns a confrontation between Andrew Secrest, a member of the Union's in-plant organizing committee, and Kenneth Sutherland, an employee within the bargaining unit.

About three weeks before the election, Sutherland was operating a small electric saw in the main work area of Horn Lumber's facility, approximately fifty feet away from other employees. Sutherland heard someone behind him say "There's a m— f—, I'm gonna blow his brains out and I'm looking straight at him." Sutherland turned and saw Secrest standing fifteen to twenty feet away looking at him. Secrest said nothing further but stood and stared at Sutherland for another thirty seconds. Two or three days prior to this incident Sutherland had made some anti-union statements in Secrest's presence. Sutherland testified that he believed that he had been threatened by Secrest because Secrest supported the union while he did not. During this confrontation Secrest was wearing a committeemen's button which was distinct from the type worn by general union supporters. The proof further indicated that Sutherland and Secrest had not spoken to each other before this confrontation and that there was no history of prior animosity between the two men. While the hearing officer specifically credited Secrest's testimony, he nonetheless rejected Horn Lumber's objection that this incident prevented a fair and free election.

The hearing officer's conclusion that there was no evidence supporting Sutherland's belief that Secrest's comments were union related is inconsistent with his own credibility findings and with ordinary experience. The hearing officer's factual finding that the impact of this statement had dissipated and that no connection with the Union was shown is unreasonable in light of the evidence and testimony presented

below. *See Hickman Harbor Service v. N.L.R.B.*, 739 F.2d 214, 219 (6th Cir.1984).

The second incident involved James Roach, another member of the in-plant organizing committee and Jerry Gray, another member of the bargaining unit. This incident occurred in the employee's restroom two to three weeks prior to the election. Gray and another employee, Rickie Messelling, were discussing the pros and cons of union representation. At some point in the conversation Gray announced that he was not going to vote for the union. Roach then approached Gray, and swung at Gray striking his hat with sufficient force to knock it off his head. Roach told Gray that Gray had "better vote for the f— union." As he made the statement Roach was wearing a "throwing knife" which is distinct from the type of tools commonly worn within the plant. The hearing officer found that Roach appeared serious during this incident. Gray considered the incident serious enough to report it to his supervisor. Messelling testified that he related the incident to two other unit employees. It was also possible that Roach's remarks could have been overheard by a third person who was in the restroom at the time. The hearing officer expressly found that Roach's threat was known to at least four and possibly five bargaining unit employees and was not isolated. The hearing officer, however, found that in light of the rough language and horseplay tolerated in this shop that she was unable to conclude that this incident was of such an aggravated nature that, *standing alone* it created a general atmosphere of fear and reprisal which rendered a free election impossible.

The hearing officer's conclusion is unreasonable in light of the evidence and testimony below. In this case there was a threat accompanied by an assault and clear evidence that information about the incident was not isolated. Furthermore, the hearing officer's conclusion that in light of the horseplay found in the plant this incident alone did not create an atmosphere of fear and reprisal is inconsistent with the evidence and the hearing officer's own credibility findings. First, none of the other examples of purported horseplay offered into evidence coupled threats of this nature with an actual assault. Second, the hearing officer found Messelling to be a credible witness and found it undisputed that Roach appeared serious in making his threat.

"To set aside a representation election it must be proven the election was conducted improperly. Moreover, it must be shown 'not only that unlawful acts occurred, but also that they interfered with the employees' exercise of free choice to such an extent that they materially affected the results of the election.' If the Board's factual findings in this area are 'reasonable in light of proven facts,' they must be upheld. However, we will not give a factual finding 'more weight than in reason and in the light of judicial experience [it] deserve[s].' " *Hickman Harbor Service v. N.L.R.B.*, 739 F.2d at 218 (citations omitted).

Our court has repeatedly emphasized the intensified effect of threats and violence in a small unit, particularly where the election results are close. *Revco D.S., Inc. (DC) v. N.L.R.B.*, 830 F.2d 70, 73 (6th Cir.1987); *Hickman Harbor Service v. NLRB*, 739 F.2d at 220; *N.L.R.B. v. Mr. Porto, Inc.*, 590 F.2d 637, 639 (6th Cir.1978). The NLRB has also noted the importance of these factors in its own cases. *See R.J.R. Archer, Inc.*, 274 NLRB 335, 336 (1985), *Steak House Meat Co.*, 206 NLRB 28 (1973). In this case both the hearing officer and the Board failed to give adequate consideration to the small size of the unit involved and the closeness of the election. A swing of one vote out of the total unit of thirty-six would have changed the result of the election.

When the closeness of the election, the size of the bargaining unit, the serious nature of the threats, the actual assault, and the credibility findings of the hearing officer are taken into account, we cannot say that the illegal acts of intimidation by members of the in-plant organizing commit-

tee[1] were so remote as not to have materially affected the outcome of this election. *NLRB v. Mr. Porto, Inc.*, 590 F.2d at 639. Petitioner has met its burden of showing the election was unfair.

Therefore, Horn Lumber's petition for review is granted and the Board's order finding the employer in violation of sections 8(a)(1) and (a)(5) of the NLRA is set aside. The Board's cross-petition for enforcement is DISMISSED and enforcement is DENIED.

GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge, dissenting.

In this case there was a secret ballot election at the Horn Company among its 36 eligible voters. The union received 19 votes and 17 were cast against union representation.

Horn claims that the election was skewed by threats of physical intimidation made by pro-union adherents in the plant. The Board, after a hearing, made findings of fact overruling these objections and the union demanded negotiations. When the petitioner refused, the Board ordered bargaining, resulting in this appeal.

My colleagues on this panel have written to overturn the Board's order. I dissent.

"The issue before us is whether the Board, in overruling the Company's objections and certifying the union, acted within the wide discretion entrusted to it by Congress in resolving questions arising during the course of representation proceedings." *Tony Scott Trucking, Inc. v. NLRB*, 821 F.2d 312, 313 (6th Cir.1987). The Board's findings of fact are conclusive if supported by substantial evidence on the record considered as a whole. 29 U.S.C. § 160(e). The Board's reasonable inferences may not be displaced on review even though the court might justifiably have reached a different conclusion had the matter been before it de novo. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951).

This appeal focuses on the events leading up to the representation election. To set aside a representation election it must be proven the election was not fairly conducted. *NLRB v. MacDonald's Industrial Products*, 731 F.2d 340, 342 (6th Cir.1984). Moreover, it must be shown not only that unlawful acts occurred, but also that they interfered with the employees' exercise of free choice to such an extent that they materially affected the results of the election. *NLRB v. Bostik Division, USM Corp.*, 517 F.2d 971, 975 (6th Cir.1975). If the Board's factual findings in this area are reasonable in light of the proven facts, they should be upheld. Here, they clearly were reasonable.

---

1. The hearing officer specifically found that members of the Union's in-plant organizing committee were not agents of the union. The Board found it unnecessary to decide whether members of the organizing committee were agents of the Union at the time of the alleged conduct because even if they were agents, their conduct was insufficient to warrant setting aside the election. We need not address the agency issue because under the circumstances of this election the laboratory conditions were so tainted with threats and violence that they warrant setting aside the election regardless of agency. We note however, that factors such as the distinct buttons worn by members of the organizing committee and how members of the bargaining unit perceived the relationship between the organizing committee and the union would have gone to the question of apparent authority had the facts of this case not been so egregious.