77 F.3d 489
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
FLUID TRANSPORT, INC., Respondent.
 No. 94-70285.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 11, 1996.*
Decided Feb. 12, 1996.
 
 Before: BRIGHT,** NORRIS, and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM***
 
 
 2
 The National Labor Relations Board ("NLRB") applies for enforcement of its March 31, 1994 decision, ordering Fluid Transport, Inc. ("Fluid"), a Southern California trucking company, to bargain collectively with Steel, Paper House, Chemical Drivers and Helpers, Local 578, International Brotherhood of Teamsters, AFL-CIO ("the Union"), as the representative of the drivers, truck loaders and washers, and maintenance employees of Fluid. We grant the application for enforcement.
 
 PROCEDURAL BACKGROUND
 
 3
 On May 5, 1993, thirteen of eighteen eligible Fluid employees voted in favor of the Union as the bargaining representative of the employees. Fluid filed objections to the election on May 12, 1993, alleging that the Union, through its representatives, had advised employees at a meeting on April 30, 1993, that it was paying employees to support and vote for the Union. A hearing was held before the regional NLRB on June 30, 1993, at which evidence was introduced that an acknowledged pro-Union employee had made comments, apparently in jest, to the effect that he had been paid by the Union to organize the Fluid workers. In an opinion issued on July 23, 1993, the hearing officer determined that there was no credible evidence to warrant setting aside the election and recommended that the election be certified. On September 30, 1993, the NLRB certified the Union as the exclusive collective-bargaining representative of the drivers, truck loaders and washers, and maintenance employees of Fluid.
 
 
 4
 Despite the NLRB's certification, Fluid refused to bargain with the Union. On November 19, 1993, the Union filed an unfair labor practice charge against Fluid pursuant to 29 U.S.C. §§ 158(a)(1) and (a)(5). The Regional NLRB Director filed a complaint before the NLRB on December 23, 1993. On March 31, 1994, the NLRB in Washington granted the acting NLRB General Counsel's motion for summary judgment and ordered Fluid to bargain with the Union. The NLRB applies to this court pursuant to 29 U.S.C. § 160(e) for enforcement of its order.
 
 DISCUSSION
 
 5
 Fluid does not dispute the fact that it refused to bargain with the Union. It bases its opposition to the NLRB's application for enforcement on two issues relating to the election. First, it contends that the local NLRB hearing officer abused his discretion by refusing to continue the hearing at which the identity of the employees eligible for the certification election was determined. Second, it contends that the comments of a Fluid employee, whom Fluid argues was a union agent, impermissibly tarnished the certification election. Both of Fluid's arguments are without merit.
 
 
 6
 I. The Hearing Officer's Refusal to Continue the Hearing
 
 
 7
 Fluid contends that the hearing officer abused his discretion by refusing to continue the hearing scheduled for March 16, 1993, at 9:00 a.m. to determine if three employees who were not full-time drivers for Fluid should be included in the bargaining unit. While Fluid's attorney was attempting to return from Washington, D.C. on March 15 in the face of a large blizzard, his firm requested a continuance until March 18 or 19, and upon the hearing officer's refusal, requested a continuance until 11:00 a.m. on March 16. The hearing officer agreed to continue the hearing until 10:30 a.m. on March 16.
 
 
 8
 A hearing officer's refusal to grant a continuance is reviewed for abuse of discretion, Canova v. NLRB, 708 F.2d 1498, 1503 n. 4 (9th Cir.1983), and will not be reversed unless "the ruling is demonstrated to clearly prejudice the appealing party." J.M. Tanaka Constr., Inc. v. NLRB, 675 F.2d 1029, 1035 (9th Cir.1982) (internal citation omitted). Fluid has not demonstrated that the hearing officer abused his discretion by refusing to grant its specific continuance requests.
 
 
 9
 The NLRB Casehandling Manual indicates that hearing "postponements will be granted only for good cause," National Labor Relations Board Casehandling Manual (Part Two): Representation Proceedings p 11142 (1975); it does not indicate any situations in which continuances must be granted. Because the NLRB had already granted one continuance to accommodate Fluid's counsel, the Union's attorney would be unable to attend another hearing for over two weeks, and the hearing officer accommodated Fluid's attorney by continuing the hearing until 10:30 a.m. on March 16, just one half hour earlier than the time requested by Fluid's counsel in his second continuation request, the hearing officer did not abuse his discretion in denying Fluid's specific requests for a continuance.[1]
 
 
 10
 II. The Employee's Statements at the April 30, 1993 Meeting
 
 
 11
 Fluid also asserts that the hearing officer erred in determining that Al Dominguez did not have an agency relationship with the Union, and that Dominguez's comments at an April 30, 1993 meeting between a consultant hired by Fluid and Fluid's employees did not affect the election.
 
 
 12
 There was substantial evidence to support the hearing officer's finding that Dominguez was not a Union agent. Though the record established that Dominguez stated at the April 30 meeting that he had been paid by the Union to organize employees, (E.R. 44, 55, 130), there is substantial evidence that Dominguez said the statements in jest. Transcript of June 30, 1993 Hearing ("June 30 Hearing") at 76, 132; E.R. 88, 92. In addition, Michael Davis, the local Union representative indicated that he was contacted by another employee about organizing Fluid's workers (E.R. 80), and that Dominguez was not hired by the Union to organize workers (E.R. 81), was not directed by the Union to hold meetings with the employees, and did not hand out flyers on behalf of the Union. June 30 Hearing at 123. Fluid has provided no evidence to the contrary. Although Dominguez met Davis on a few occasions and spoke with him on the phone on three occasions, Davis had told all the employees to call whenever they wanted. He was called by three or four other employees before the election, and received several calls from the employee who had originally sought the Union's assistance. Id. at 124. Overall, there is substantial evidence in the record that Dominguez was not an actual agent of the Union.
 
 
 13
 In addition, Dominguez did not have apparent or implied authority to act on behalf of the Union. By relying on Colquest Energy, Inc. v. NLRB, 965 F.2d 116 (6th Cir.1992), and Bio-Medical Applications of Puerto Rico, Inc., 269 N.L.R.B. 827 (1984), Fluid demonstrates its misunderstanding of agency law. Colquest stated that an implied or apparent agency could be established "if an employer demonstrates that a union cloaked its supporters ... with sufficient authority to create a perception among the rank and file that these employees were acting on behalf of the union." 965 F.2d at 122 (emphasis added). Bio-Medical stated that an agency relationship would exist "if the principal empowered the agent to represent the principal within the general area in which the agent has acted." 269 N.L.R.B. at 828 (emphasis added). According to the Restatement (Second) of Agency, "apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." Id. § 27 (emphasis added). Thus, the mere perception that someone is a union agent is insufficient to bestow that person with implied or apparent agency, absent some action on the part of the union that creates that perception.
 
 
 14
 Fluid argues that there was a clear "perception on the part of rank and file employees that Dominguez was a union organizer." Blue Br. at 24. However, despite Dominguez's acknowledged Union advocacy, there was substantial evidence to support a finding that Dominguez was not so perceived. Despite his obvious support of the Union at the April 30 meeting, at an earlier meeting between McChristy and some employees, Dominguez made no comments, with the possible exception of two belches when McChristy made unflattering comments about unions. June 30 Hearing at 37. Two Fluid employees testified that when Dominguez made his comment about being paid by the union, "everybody" at the meeting laughed, id. at 76, 132, because "everybody knew where Al was from." Id. at 132. Although one employee, Cadilli, testified that Dominguez organized a meeting with a Union representative who handed out election authorization cards, June 30 Hearing at 70, and that another employee asked Cadilli if he thought that Dominguez had been paid by the Union, E.R. 86, there was substantial evidence that Dominguez was not perceived to be acting on behalf of the Union.
 
 
 15
 Even if there was such a perception on the part of the employees, it was not created by the Union. Though Dominguez may have organized the meeting during which authorization cards were distributed, he apparently did not distribute them himself, and any agency that he had would have been limited to the solicitation process. See DID Bldg. Servs., Inc. v. NLRB, 915 F.2d 490, 496-97 (9th Cir.1990). His calls to the Union were apparently on his own behalf (June 30 Hearing at 123), and he was not designated by the Union as a contact person for employees interested in the Union.[2] Most of the organizing of the employees was done by Mike Davis, the Union representative, himself. June 30 Hearing at 121-25. There was substantial evidence in the record to support the NLRB's determination that Dominguez was not an actual, apparent, or implied agent of the Union.
 
 
 16
 "Coercive misconduct only warrants the setting aside of an election when it 'so influenced potential voters that a free choice [became] impossible.' " NLRB v. Chicago Metallic Corp., 794 F.2d 527, 532 (9th Cir.1986) (internal citations omitted). Because Dominguez was not a Union representative, his conduct would need to be particularly aggravated to warrant our overturning the election. DID Bldg. Servs., 915 F.2d at 498. As "the party challenging the election[, Fluid] bears the heavy burden of proving that misconduct prevented a fair election." Id. at 493. Fluid cannot meet its burden.
 
 
 17
 Dominguez's statements were made during a heated discussion with Fluid's hired consultant, at a meeting called by the consultant. They were isolated, spontaneous statements, recognized as such by the other employees, most of whom laughed. Moreover, despite Fluid's assertion that Dominguez's statement constituted a promise "that additional and similar benefits will be forthcoming once the union attains representational status" (Reply Br. at 3), the statement was not such an unambiguous promise of a benefit.[3] It is equally likely that the employees could have perceived Dominguez's alleged receipt of thousands of dollars for organizing the employees as lessening the credibility of his pro-Union arguments. Fluid offered no evidence to indicate that any employees voted against their personal choice because of Dominguez's comments.[4] Overall, the record contains substantial evidence to support the hearing officer and NLRB's approval of the election.
 
 CONCLUSION
 
 18
 Finding no merit to any of Fluid's challenges to the Union certification election, we GRANT the NLRB's application for enforcement.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 Hon. Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Fluid has also completely failed to articulate how it was prejudiced by the hearing officer's decision. Fluid's attorney was able to attend the hearing and present Fluid's arguments against the inclusion of certain employees in the bargaining unit. Fluid has not pointed to any evidence that it was unable to present, or unable to present adequately, stating only that "there may, in fact, be other issues the Employer could have raised, but was unable to do so because of the lack of preparation time." Blue Br. at 12. This is wholly insufficient to demonstrate prejudice
 
 
 [2]
 Compare Colquest, 965 F.2d at 122; NLRB v. West Coast Liquidators, Inc., 725 F.2d 532, 536 (9th Cir.1984); May Dep't Stores Co. v. NLRB, 707 F.2d 430, 433-34 (9th Cir.1983); NLRB v. Advance Sys., Inc., 681 F.2d 570, 576 (9th Cir.1982)
 
 
 [3]
 Fluid's case is not aided by Revco D.S., Inc. (DC) v. NLRB, 830 F.2d 70 (6th Cir.1987), in which the court held that an election, which the union won by one vote, had been contaminated by a union agent's offer to pay another employee $100 to vote for the union. The offered payment was clearly an offer of benefit, unlike Dominguez's statement
 
 
 [4]
 See NLRB v. Sonoma Vineyards, Inc., 727 F.2d 860, 865 (9th Cir.), cert. denied, 469 U.S. 836 (1984) (election not overturned where employer offered no evidence that any employee was deterred from voting or voted against his personal choice because of union threats that alien workers would be deported); NLRB v. Eskimo Radiator Mfg. Co., 688 F.2d 1315, 1319 (9th Cir.1982) (same)